[No. B169184. Second Dist., Div. Six. May 20, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JOHN ZICHKO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

## COUNSEL

Jerry D. Whatley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Susan Lee Frierson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.—** ▆  In a bifurcated trial, Robert John Zichko was found not guilty by reason of insanity of making a criminal threat. (Pen. Code, §§ 1026, 422.)[1] He appeals his order of commitment to the Department of Mental Health based on instructional error during the guilt phase of the trial. He contends that the trial court erred by failing to instruct the jury that the statement constituting the threat should be viewed with caution. (CALJIC No. 2.71.) We hold that the cautionary instruction is not to be given when defendant's words constitute the crime itself. [[/]]* We affirm.

### FACTS AND PROCEDURAL HISTORY

Zichko entered a bank and, after initially waiting to speak to another bank official, walked to the window of teller Yvonne Ford. Zichko told Ford that

---

[1] All statutory references are to the Penal Code.

* See footnote, *ante*, page 1055.

"he wanted to withdraw enough money to go buy a gun and a clip with enough bullets to shoot everyone." Ford handed Zichko a withdrawal slip and walked over to the bank manager and bank vice-president Kelley Stolz and told them to call the police. Ford did not activate the silent alarm because she did not want Zichko to remain in the building when the police arrived. Ford and Stolz walked back to Ford's teller window. Zichko said he wanted to withdraw money to purchase a gun and, after Ford asked him if he wanted to close his account, Zichko stated, "Do you want to make me angry so I can come back here and shoot you all in the head?" Shortly thereafter, Zichko left the building. He was arrested the next day.

Zichko was charged with two counts of making a criminal threat, one count for a threat against Yvonne Ford, and one count for a threat against Kelley Stolz. The count against Stolz was later dismissed. Zichko pleaded not guilty and not guilty by reason of insanity. A jury found Zichko guilty of committing the offense, and the trial court found him not guilty by reason of insanity. He was committed to the California Department of Mental Health for placement in Atascadero State Hospital for a maximum period of three years.

On appeal Zichko challenges only his conviction for making a criminal threat.

## DISCUSSION

### *CALJIC No. 2.71 Not Required*

Zichko asserts that his threat "to withdraw enough money to go buy a gun and a clip with enough bullets to shoot everyone," and his threat to "come back here and shoot you all in the head" were out-of-court admissions within the meaning of CALJIC No. 2.71.[2] Zichko contends that, given their importance to proving his guilt, the trial court erred by failing to instruct the jury to view his threatening statements with caution as set forth in CALJIC No. 2.71. We disagree.

The trial court has a duty to give CALJIC No. 2.71 sua sponte where an admission by the defendant is used to prove a part of the prosecution's case. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1224 [249 Cal.Rptr. 71, 756

---

[2] CALJIC No. 2.71 provides: "An admission is a statement made by [a] [the] defendant which does not by itself acknowledge [his] [her] guilt of the crime[s] for which the defendant is on trial, but which statement tends to prove [his] [her] guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part. [¶] [Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution.]"

P.2d 795].) Zichko relies on *People v. Carpenter* (1997) 15 Cal.4th 312, 392–393 [63 Cal.Rptr.2d 1, 935 P.2d 708], which concludes that the instruction must be applied broadly to achieve its purpose of assisting the jury to determine if the statement was in fact made. As Zichko notes, *Carpenter* states that the instruction applies to any oral admission, "whether made before, during, or after the crime." (*Id.*, at p. 393.)

In *Carpenter*, the defendant was convicted of several offenses, including the murder and attempted rape of one of his victims. Just before he shot and killed the victim, the defendant told her, " ' "I want to rape you." ' " (*People v. Carpenter, supra*, 15 Cal.4th at p. 345.) The court held that CALJIC No. 2.71 should have been given as to this statement, observing that the statement "was part of the crime itself." (*Id.*, at p. 392.)

*Carpenter* is inapposite to the instant case. The statement by Carpenter that he wanted to rape the victim was part of the crime in the sense that the statement acknowledges and "tends to prove" the mental state necessary to the commission of attempted murder and was made during commission of that crime. Making the statement, however, was not the criminal act of attempted rape.

Zichko's verbal threat to shoot Ford and others in the bank was the act of making a criminal threat. The statements constituted the crime, not admissions of the crime within the meaning of CALJIC No. 2.71. An admission has a distinct meaning in criminal law. It is an acknowledgment, declaration or concession of a fact or action that tends to prove guilt or from which guilt may be inferred. (*People v. Ferdinand* (1924) 194 Cal. 555, 568 [229 P. 341]; *Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 828–829 [56 Cal.Rptr.2d 870].) In the words of CALJIC No. 2.71, an "admission" is a statement "which does not by itself acknowledge" guilt of the crime, but "tends to prove . . . guilt when considered with the rest of the evidence."

An admission is often compared to a confession. A confession is a declaration, or acknowledgment sufficient to establish guilt of the crime. (*People v. Ferdinand, supra*, 194 Cal. at 568.) An admission is similar to but less than a confession. It is "an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, and which tends only toward the proof of the ultimate fact of guilt." (*Ibid.*)

Unlike an admission that acknowledges something tending to prove guilt or a confession that acknowledges guilt, the statements in this case constituted the criminal act charged against Zichko. It would have been an admission, for example, if before the offense Zichko told someone that he planned to threaten people at the bank. And it would have been an admission or a confession if, after the offense, Zichko repeated to a friend what he had said

to the bank teller.[3] But making the threat to the bank teller did not acknowledge the crime; making the threat was the crime.

■ The difference between a statement that is a criminal act and an admission is made evident by the language of CALJIC No. 2.71 itself. The instruction advises the jurors that they "are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part." But, it is immaterial whether Zichko's threat to shoot everyone was true. A threat may be a crime "even if there is no intent of actually carrying it out." (§ 422.) There would be no reason to instruct a jury that it must determine whether Zichko's statements were "true in whole or in part."

More importantly, instructing the jury with CALJIC No. 2.71 in this case would have been inconsistent with the reasonable doubt standard of proof. The purpose of CALJIC No. 2.71 is to direct the jury to use caution in deciding whether an admission was made. Here, as the trial court instructed, the People had the burden of proving Zichko guilty beyond a reasonable doubt and that he must be found not guilty unless the elements of the crime were proven beyond a reasonable doubt. Therefore, a guilty verdict required the jury to conclude beyond a reasonable doubt that Zichko made the threatening statements. To also instruct the jury that the statements "should be viewed with caution" (CALJIC No. 2.71) would have been at least superfluous and may have been confusing to the jury. It could have misled the jury into believing that it could find Zichko guilty even if it did not conclude beyond a reasonable doubt that the statements were made, as long as the jury exercised "caution" in making its determination.

### Instruction on Attempted Criminal Threat Not Required

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied June 4, 2004, and appellant's petition for review by the Supreme Court was denied August 11, 2004.

---

[3] Because it is not material to this opinion, we do not consider whether the words uttered by Zichko if uttered after the offense would have constituted an admission or a confession.

*See footnote, *ante*, page 1055.